(25 App. Div. 447.)

## In re BUFFALO TRACTION CO.

(Supreme Court, Appellate Division, Fourth Department.   February 6, 1898.)

1. STREET RAILWAYS—CONSENT OF ABUTTING PROPERTY OWNERS—CURATIVE
   STATUTE.
   Under Laws 1896, c. 649, validating proceedings to obtain authority to
   maintain street surface railroads which are defective for failure to comply
   with General Railroad Law, § 59, and providing that such surface railroads
   may be constructed and operated on obtaining the consent of the abutting
   property owners, the consent of such property owners need not be obtained,
   where the commissioners appointed by the court, on application for leave
   to construct such road determine the necessity thereof, and such determina-
   tion is confirmed by the court.

2. STATUTES—RE-ENACTING EXISTING LAWS.
   Laws 1896, c. 649, validating proceedings to obtain authority to maintain
   street surface railroads which do not conform to General Railroad Law,
   c. 59, is not in conflict with Const. art. 3, § 17, providing that no act shall
   be passed making an existing law a part thereof without inserting same.

3. SAME—LOCAL OR PRIVATE LAWS.
   Laws 1896, c. 649, validating defective proceedings to obtain authority to
   maintain street surface railroads, is not a local or private statute, within the
   prohibition of Const. art. 3, § 18, though it may affect but one railroad com-
   pany in the state.

4. STREET RAILROADS—CONSENT OF LOCAL AUTHORITIES.
   The board of aldermen fixed the day of hearing of an application for leave
   to construct a street railroad as required to be obtained by General Railroad
   Law, § 91, as amended by Laws 1896, c. 855, and notice of such day of
   hearing was given.   On the day fixed that board passed a resolution grant-
   ing such leave, which was afterwards approved by the board of council-
   men and the mayor.   *Held*, that such leave was obtained in substantial com-
   pliance with the law.

   Ward, J., dissenting.

Motion by the Buffalo Traction Company to confirm report of com-
missioners, appointed by the court, reporting in favor of the construc-
tion and operation of petitioner's street railway through the streets
as petitioned.

This proceeding was instituted under section 94 of the railroad law by the
service of a verified petition upon the property owners residing on Utica street,
in the city of Buffalo, who had not given their consent to the construction of
the petitioner's railroad, and was returnable before this court on the 23d of
March, 1897.   The court by an order duly made herein, and bearing date the
9th day of April, 1897, appointed three commissioners to determine whether the
petitioner's street surface railroad ought to be constructed and operated on said
street.   Legal objections were taken by the counsel for the property owners,
and it was made a part of the order appointing the commissioners "that all legal
objections as to the right of the petitioner to construct its said road be, and the
same hereby are, reserved until the filing and report of the commissioners hereby
appointed."   The commissioners took testimony and heard the parties, and
have reported in favor of the petitioner's rights to construct and operate the
said street railway, and the petitioner moves to confirm the report of the said
commissioners.   The landowners object to its confirmation, and present certain
legal objections, which were reserved for consideration at the time that the
commissioners were appointed, to be disposed of upon the coming in of the
report.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN,
and WARD, JJ.

J. H. Metcalf, for petitioner.

Eugene Bartlett, for contestant landowners.

ADAMS, J. On the 23d day of March, 1897, this court appointed three commissioners to determine whether a street surface railroad ought to be constructed and operated in East and West Utica street, in the city of Buffalo. The order appointing such commissioners was made upon the application of the Buffalo Traction Company; such application being based upon a duly-verified petition, which stated, among other things, that the petitioner had obtained the consent of the local authorities of the city having control of those portions of the streets and highways upon which it was proposed to construct its railroad, but that the owners of more than one-half in value of the property along the proposed route thereof had refused to consent to its construction, maintenance, and operation. Several of the property owners filed answers to the petition, denying many of the allegations therein contained, and more especially the one which stated that the consent of the local authorities had been obtained. The answers likewise averred that the petitioner had failed in various particulars, which were specifically mentioned, to comply with the requirements of section 59 of the general railroad law, and for these reasons demanded that the proceedings should be dismissed. The order heretofore made by this court expressly provided that all the issues raised by the contestants' answers should be reserved until the commissioners had made and filed their report. Subsequently a hearing was had before the commissioners named in the order, who have since reported and certified to this court that, in their judgment, "the street surface railroad of the said Buffalo Traction Company, above entitled, ought to be constructed and operated in East and West Utica street, in the city of Buffalo." Upon the present application to confirm such report, the objections raised by the contestants' answers are renewed, and it becomes necessary, therefore, at this stage of the proceedings, to give to them the consideration which their importance and the magnitude of the interests involved demand.

Before discussing the several legal propositions to which our attention has been directed, it is proper to observe that our examination of the proofs accompanying the report of the commissioners satisfies us beyond any question that the conclusion reached by them respecting the necessity and propriety of constructing the proposed surface railroad through East and West Utica street is fully justified. Indeed, we fail to see how, with any regard to such proofs, they could have reached a different conclusion; and therefore we ought not to hesitate to grant the present application, unless satisfied that there is some legal obstacle in the way of confirmation. We proceed at once, therefore, to an examination of the real questions in the case.

The objections raised by the contestants are numerous, but they all arise, either directly or indirectly, out of the alleged failure upon the part of the petitioner to comply with the requirements of sections 59 and 91 of the railroad law, which, so far as it is necessary for our present purpose to quote therefrom, read as follows, viz.:

"No railroad corporation hereafter formed under the laws of this state shall exercise the powers conferred by law upon such corporations or begin the construction of its road until the directors shall cause a copy of the articles of association to be published in one or more newspapers in each county in which the road is proposed to be located, at least once a week for three successive weeks, and shall file satisfactory proof thereof with the board of railroad commissioners; nor until the board of railroad commissioners shall certify that the foregoing conditions have been complied with, and also that public convenience and a necessity require the construction of said railroad as proposed in said articles of association. * * *" General Railroad Law, § 59.

"A street surface railroad, or extensions or branches thereof, shall not be built, extended or operated unless the consent in writing acknowledged ,or proved as are deeds entitled to be recorded, of the owners, in cities and villages, of one-half in· value, and in towns, not within the corporate limits of a city or village, of the owners of two-thirds in value, of the property bounded on, 'and also the consent of the local authorities having control of that portion of a street or highway upon which it is proposed to build or operate such railroad shall have been first obtained. * * *" Id. § 91.

It is not claimed by the learned counsel for the petitioner that any of these conditions have been performed, save the one requiring that the consent of the local authorities be first obtained. On the contrary, it is conceded that the board of railroad commissioners has refused to certify that public convenience and a necessity require the construction of the petitioner's road, and that the requisite consent of property owners along the line of its railroad has not been obtained. But, while thus admitting that its preliminary proceedings are irregular and defective in the particulars just mentioned, the petitioner nevertheless insists that, having ·obtained the certificate of the commissioners heretofore appointed that the road, in their opinion, ought to be constructed, it is in a position to demand the relief sought by this application, and it bases its contention upon an enabling act passed by the legislature of this state in 1896, and which provides as follows, viz.:

"An act to validate and confirm certain consents heretofore given by the local authorities of cities of the first and second class in the construction, operation and maintenance of street surface railroads therein.

"Section 1. All consents given since December 1st, eighteen hundred and ninety-five, by the local authorities of any city of the first or second class, to the construction, operation and maintenance of a street surface railroad in any such city by a railroad corporation which has not complied with the provisions of section 59 of the railroad law or has failed to obtain the certificate therein provided for, are hereby validated and confirmed, and any such corporation may construct, operate and maintain a street surface railroad over, along and upon the streets, avenues, highways and public places described in such consent upon obtaining the consent of the owners of property bounded on such streets, avenues, highways and public places as provided by law." Laws 1896, c. 649.

The sole purpose of this enactment is obviously to afford relief to street railroad companies in cities of the first and second class which have for any reason omitted to observe the preliminary requirements of section 59 of the railroad law; and, it being conceded that the city of Buffalo is a city of the second class, the petitioner is clearly brought within its operation and may avail itself of its provisions, provided the act is a valid exercise of legislative power. It is the contention of the contestants, however, that this enactment is, in several respects, 'in direct contravention of the constitution

of the state, and we shall consider, therefore, such of the propositions discussed by counsel as, in our opinion, have any material bearing upon the issue thus presented.

The first of these propositions to which we shall direct our attention is the one advanced by the contestants, to the effect that the petitioner cannot avail itself of the privileges afforded by the enabling act to which reference has just been made, for the reason that it has failed to obtain the consent of the owners of property bounded by the "streets, avenues, highways and public places, over or through which it proposes to construct its road"; such consent being expressly required as a condition precedent to the enjoyment of the benefits conferred by the act. The petitioner, in seeking to avail itself of the privileges granted by the legislature, was undoubtedly bound to exercise the same according to the terms and conditions upon which they were granted. In other words, it was not at liberty to accept such of them as were deemed desirable and reject the remainder (In re Metropolitan Transit Co., 111 N. Y. 588, 19 N. E. 645); and therefore, if it has in fact failed to fulfill any of the conditions imposed upon it by the act of 1896, the contestants are clearly correct in their contention. As has been before stated, the consent of the property owners certainly has not been obtained. There is no controversy as respects this feature of the case. But, independently of the act in question, the petitioner was not obliged to obtain such consent before constructing and operating its road; for, under the general railroad law, it might, in the event of its failure to obtain the same, apply to this court, as it did, for the appointment of commissioners, whose determination of the question, when confirmed by the court, is to be taken in lieu of the consent of the property owners (State Const. art. 3, § 18; General Railroad Law, § 94); and the important inquiry with which we are now confronted is, does the act of 1896 impose any other or different conditions from those existing prior to its passage?

In this connection it is to be noted that the act provides that the consent of adjoining landowners shall be obtained in the manner "provided by law"; which means, of course, that it shall be obtained to the extent and in the manner specified in section 91. But suppose that the owners, as in the present instance, refuse to yield their consent; is a corporation seeking to construct a surface railroad to be deprived of the alternative remedy provided by section 94? Such a construction, we think, would be both harsh and unnatural, and it is one which we do not understand the contestants to seriously insist should be given to the words just quoted; their contention being that this provision is in conflict with section 17 of article 3 of the state constitution, which declares that "no act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of said act, or which shall enact that any existing law, or part thereof, shall be applicable, except by inserting it in such act"; and if the petitioner were seeking to qualify the substance of the special act, or to limit or modify its terms by reference to any other act, this contention would undoubtedly be well founded. It has been held, however, that this constitutional inhibi-

tion does not relate to mere matters of procedure, but that, in cases where "the right is given, the duty declared, or burden imposed by the special statute, but the enforcement of the right or duty, and the final imposition of the burden, are directed to be in the form and by the procedure given by the other and general laws of the state," there is no violation of either the letter or the spirit of the constitution. People v. Banks, 67 N. Y. 568–575. This principle was reaffirmed in Re Union Ferry Co., 98 N. Y. 139; and more recently in the case of People v. Lorillard, 135 N. Y. 285, 31 N. E. 1011. It has also been adopted by the supreme court of New Jersey, in giving construction to a similar provision of the constitution of that state. De Camp v. Railroad Co., 47 N. J. Law, 43–49.

Again, it is urged that the act of 1896 is repugnant to section 18 of the same article of the constitution, in that it is a private or local bill, granting to the petitioner the right to lay down its railroad tracks in the city of Buffalo. But this proposition, it seems to us, cannot be sustained without resorting to a rule of construction which is not favored by the courts; for it is well settled that a constitutional provision which aims to correct some particular evil should not be so construed as to embrace cases which do not fairly fall within its general purpose and policy. In other words, unless a statute is absolutely at war with the constitution it should not be declared invalid. People v. Terry, 108 N. Y. 1, 14 N. E. 815. Such is manifestly not the case here, for the act in question does not refer to the petitioner nor to any other corporation or association; neither does it grant to any existing railroad corporation in this state exclusive franchises. It simply confers and confirms certain rights and privileges to which the petitioner, in common with all other surface railroads in the state, was entitled under the general laws, but which it had omitted to avail itself of by failing to conform to the requirements of those laws, and it should, therefore, as we have already indicated, be regarded as in pari materia with the general railroad law. In re New York El. R. Co., 70 N. Y. 327; Mayor, etc., of City of New York v. Eighth Ave. R. Co., 118 N. Y. 389, 23 N. E. 550. It may be that Buffalo is the only city, and that the petitioner is the only railroad company in the state, which will be affected or benefited by this enabling act. This circumstance, however, does not constitute the law, which, as we have seen, is general in its terms, a local or private bill, within the meaning of the provision of the constitution to which we have adverted. People v. Squire, 107 N. Y. 593, 14 N. E. 820.

With the last proposition established in the manner indicated, we think it follows, as a necessary corollary, that the act of 1896 does not fall within the constitutional inhibition of section 16, art. 3, which provides that no local or private bill shall embrace more than one subject, which subject shall be expressed in its title.

Having thus considered the objections to the petitioner's motion, with a view to ascertaining wherein, if at all, the act of 1896 is in conflict with the fundamental law of the state, and having reached a conclusion upon this branch of the case which is adverse to the contention of the contestants, it only remains to determine whether the

petitioner has brought itself within that provision of the act which requires it to obtain the consent of the local authorities of the city of Buffalo to the construction of its railroad. Section 91 of the general railroad law, as amended by chapter 855 of the Laws of 1896, after requiring, as a condition precedent to the construction of a surface railroad, that the consent of the local authorities shall be obtained, provides that "in cities the common council, acting subject to the power now possessed by the mayor to veto ordinances," shall be the local authorities referred to; "and that if in any city or county the exclusive control of any street, avenue or other property, which is to be used or occupied by any such railroad, is vested in any other authority, the consent of such authority shall also be first obtained." It seems that, by the charter of the city of Buffalo, "the legislative power of the city shall be vested in a common council, which shall consist of a board of councilmen and a board of aldermen" (Rev. Charter City of Buffalo, c. 1, tit. 2, § 4); and that "no action of the common council shall be of force unless it shall have originated in the board of aldermen, and shall have been approved by the board of councilmen; but the board of councilmen may amend any measure transmitted to it and return the same to the board of aldermen for further consideration; if the board of aldermen agree to such an amendment its action as amended shall be the action of the common council; if it shall not agree thereto, and shall further amend it, they may return the measure as finally passed by it to the board of councilmen for its further consideration" (Id. § 5). And it is further provided, by the section last quoted, that "whenever by law the giving of notice, reference to any committee or any officer or person, or other act is made a prerequisite to action by the common council, it shall be necessary for such notice to be given, reference to be made or other act to be done by the board of aldermen only, unless herein otherwise specifically provided."

It is averred in the petition herein that the consent of the common council of the city of Buffalo to the construction of the proposed railroad has been obtained, and that such consent was duly approved by the mayor of the city on the 6th day of January, 1896. The contestants, while denying this averment, undertake to set out in their answers the several steps taken by the petitioner in its attempt to procure the consent of the local authorities, from which it is made to appear that the petitioner filed its application for leave to construct its road with the board of aldermen of the city on the 11th day of November, 1895; that on the 2d day of December, following, that branch of the common council adopted a resolution to the effect that such application would be first considered by the common council on the 21st day of December, 1896, and directed the publication of such resolution in two daily newspapers of the city, to be designated by the mayor, and that such resolution was subsequently approved by the board of councilmen, signed by the mayor, and duly published in the manner directed. It is further asserted that no meeting of the common council was held on the 21st day of December, but that on that day the petitioner's application was considered by the board of aldermen only, which body thereafter, and on the 23d day of De-

49 N.Y.S.—67

cember, adopted the resolution granting permission to the petitioner to construct and operate its railroad in the various streets of the city, which resolution was on the following day approved and adopted by the board of councilmen.

It is · argued by the learned counsel for the contestants that the consent thus granted was wholly unauthorized, and that it is therefore illegal and void. We do not discover why the city's consent, even upon the contestant's theory, was not obtained in substantial compliance with the requirements of the city charter, and, if so, it becomes unnecessary to further consider this particular feature of the case, inasmuch as the statute expressly declares that any notice, publication, or consideration, heretofore or hereafter given, made or had in substantial conformity with the requirements thereof, shall be sufficient. General Railroad Law, § 92. In case the contention of the learned counsel for the contestants is well founded, that chapter 649 of the laws of 1896 is unconstitutional, it affords no reason for not confirming the report of the commissioners.

Before a street railroad can be built, three consents must be acquired: (1) Of the owners of lands abutting on the street in which the road is to be constructed, or the substituted consent of this court; (2) of the local authorities having control of the street to be occupied; (3) of the board of railroad commissioners. By this proceeding the petitioner is simply seeking to acquire the consent of this court, in the place of the consent of the abutters, which has been refused. In case the consent of the local authorities is, as the contestants assert, wholly void, and in case the consent of the board of railroad commissioners, and a new consent of the local authorities, must be obtained before the road can actually be constructed through the street in question, such facts are no defense to this proceeding, which is quite independent of the second and third proceedings.

Our conclusion of the whole matter, therefore, is that the act of 1896 is not in conflict with the fundamental law of the state; that while the petitioner has undoubtedly neglected to take some of the preliminary steps required by the general law as a condition to the construction and operation of its road, which but for that act would deprive it of the right to maintain these proceedings, it is nevertheless in a position, by virtue of the special act, to apply to this court for permission to lay its tracks in East and West Utica street; and that, in view of the report made by the commissioners to whom the matter has been referred, such application ought to be granted.

Motion to confirm the report of the commissioners granted. All concur, except WARD, J., dissenting.

WARD, J. (dissenting). The legislature has imposed three conditions upon the occupation of the street of a city by a street railroad: First. The certificate of the state board of railroad commissioners that public convenience and necessity requires the construction of its railroad. This is made necessary by section 59 of chapter 565 of the Laws of 1890, as amended by chapter 545 of the Laws of 1895. That section further provides that, if the commissioners refuse this certificate, an appeal lies to the general term of the supreme

court (now appellate division) of the department in which the railroad is to be constructed, in whole or in part.   The appellate court, if sufficient reasons appear, may order the commissioners to issue the certificate.   Second. Consent of the city authorities.   Third. The consent of the owners of one-half in value of the property bounded on the street proposed to be taken.   Section 94 of the same act, as amended by chapter 676 of the Laws of 1892, provides that, if the property owners do not consent, the corporation failing to obtain consent may apply to the general term (now appellate division) of the proper department for the appointment of three commissioners to determine whether such railroad ought to be constructed and operated, upon due notice; and the court may, in a proper case, appoint commissioners to hear the parties; and if they shall report that such road ought to be constructed and operated, and such report is confirmed by the court, this result shall be taken in lieu of the consent of the property owners.   The state constitution, which took effect January 1, 1895 (see article 3, § 18), authorizes the legislature to provide for this subject by general laws with certain limitations. It is conceded in this case that the traction company has neither obtained the certificate of the railroad commissioners nor the consent of the landowners or property owners upon Utica street, for the construction of its railroad.

A question arises upon this record, also, as to whether the company has obtained the consent of the city authorities of the city of Buffalo.   Some of the property owners have answered, denying that such consents have been obtained.   We have not directed any reference in order to obtain the facts as regards the consent of the city authorities, and we have nothing before us but the petition and accompanying papers to show that such consent has been obtained, with the denial of the same in the opposing papers; but we will discuss the other questions in the case.

The traction company claim that they are relieved from the necessity of obtaining such certificate by reason of chapter 649 of the Laws of 1896, which is entitled "an act to validate and confirm certain consents heretofore given by the local authorities of cities of the first and second class in the construction, operation and maintenance of street surface railroads therein":

"Section 1. All consents given since December 1, 1895, and prior to February 1, 1896, by the local authorities of any city of the first and second class, to the construction, operation and maintenance of a street surface railroad in any such city by a railroad corporation which has not complied with the provisions of section 59 of the railroad law or has failed to obtain the certificate therein provided for, are hereby validated and confirmed, and any such corporation may construct, operate and maintain a street surface railroad over, along and upon the streets, avenues, highways and public places described in such consent upon obtaining the consent of the owners of property bounded on such streets, avenues, highways or public places as provided by law."

The traction company further claims that, while it has not been able to obtain the consents of the property holders, it is in the act of procuring a substitute for such consents through the action of this court, in this proceeding, under section 94, and under the constitutional provision which we have cited; so that its position, plainly

stated, is this: That it need not furnish the railroad commissioners' certificate, because the statute quoted makes it unnecessary; that it is not required to procure the consent of the property holders, although required by the special act, as a condition of dispensing with the railroad certificate, because, under the general railroad act, the court may consent for the property holders. This position is not tenable. The legislation upon this subject was for the purpose of throwing safeguards around the appropriation of city streets by railroad companies, of an important and necessary character. When the consent of the city authorities was obtained; when the consent of the railroad commissioners was obtained,—then, and only then, prior to this special act that we have quoted, could an appeal be taken to the court, if the company was unable to procure the necessary consents of the property holders. That was the condition of the law when the special or curative act was passed. That act seemed to have a double purpose: First, to make valid certain proceedings to obtain the consent of the city authorities; second, to relieve the company procuring the certificate of the railroad commissioners. The legislature consented that they be relieved from procuring this certificate provided the consents of the property holders representing one-half in value of the property on Utica street were obtained. The legislature, in its wisdom, thought the property holders protected if one-half of their number consented to the occupation of this street by the railroad. It did not provide for the consent of the court, or any other body, except such property holders. It did not adopt as a part of that curative act any prior legislation upon the subject of constructing street railroads in cities. It simply dispensed, in its judgment, with the certificate of the railroad commissioners, if the conditions imposed by the statute were performed.

The prevailing opinion in this case seems to hold that the provision in the curative act, that the consent of the landowners should be obtained in the manner "provided by law," authorizes the court to consent for the landowners, in case they withheld their consent. This construction, it seems to me, is strained and unwarranted, as it permits the court to consent for both the railroad commissioners and the adjoining owners, and defeats the manifest intent of the legislature. The traction company was bound to exercise the privilege of dispensing with this certificate, if at all, within the terms upon which it was conferred. It cannot take part and reject the rest. In re Metropolitan Transit Co., 111 N. Y. 601, 19 N. E. 645. My conclusion is that inasmuch as the traction company has not obtained the certificate of the railroad commissioners, nor the consent of the property holders upon Utica street, it is not in a position to ask for a confirmation of this report, and that we have no jurisdiction to grant the order, and that the application to confirm the report of the commissioners should be denied, with costs.