In re LONG ISLAND R. CO.
No. 47970.

United States District Court,
E. D. New York.
July 7, 1954.

See also 100 F.Supp. 810, 100 F. Supp. 999, 111 F.Supp. 629, 114 F.Supp. 363.

Conboy, Hewitt, O'Brien & Boardman, New York City, for Long Island R. Co., debtor, Pennsylvania R. Co., and American Contract & Trust Co., Bernard Sobol, New York City, of counsel.

Adrian P. Burke, Corp. Counsel of City of New York, New York City, Leo A. Larkin, First Asst. Corp. Counsel, New York City,

William W. Golub, New York City, for Long Island Transit Authority.

Henry I. Stimson, New York City, for trustee.

William Wyer, in pro. per.

Nathaniel L. Goldstein, Atty. Gen., of State of New York, Abe Wagman, New York City, of counsel.

G. Burchard Smith, County Atty. for Nassau County, Mineola, Orrin G. Judd, New York City, of counsel.

Milbank, Tweed, Hope & Hadley, New York City, for Chase Nat. Bank of City of New York, as Trustee under the Refunding Mortgage, Orville W. Wood, New York City, of counsel.

Cravath, Swaine & Moore, New York City, for Chemical Bank & Trust Co., as Trustee of Unified Mortgage, H. P. Riordan, New York City, of counsel.

Edward S. Blackstone, New York City, for various claimants now in claim under 45 U.S.C.A. 51.

Joseph J. Doran, Albany, N. Y., for Public Service Commission of State of New York.

BYERS, District Judge.

The debtor has filed a petition verified June 17, 1954, to terminate and consequently dismiss this proceeding for the reason that it is in the position to qualify as a railroad redevelopment corporation as contemplated by Chapter 824 of the Laws of New York of 1954, enacted June 14, 1954, Railroad Law, McKinney's Consol.Laws, c. 49, §§ 300–313; and that it should be permitted so to qualify and otherwise to enter into all financial arrangements as specified, whereby it will have paid in full or adequately provided for all of its financial obligations and those of the present Trustee and prior Trustees appointed in this proceeding; and will have assumed and agreed to pay in due course all such obligations as are not presently due and payable, or will have otherwise discharged as provided for all such obligations in a manner consented to by the holders thereof.

This proceeding has been pending since March 2, 1949 and no plan of reorganization as contemplated by Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, has thus far been perfected for consideration by the Court, although one is pending before the Interstate Commerce Commission subject to the submission of briefs before that body on September 1, 1954.

During the more than five years which have elapsed since the filing of the original petition, the Debtor has been adequately operated under successive trustees appointed to administer the Debtor's property, but it cannot be said that such a legal expedient is desirable in and of itself, provided that the special skills peculiar to the competent running of a railroad as a private enterprise can be substituted therefor, under conditions calculated to promote successful operation and maintenance from the standpoint of the traveling public.

This Debtor is probably *sui generis* from the legal as well as the railroad point of view. Its sole substantial stockholder, and its sole substantial bondholder, is and for many years has been the Pennsylvania Railroad Company; thus there are no conflicts among security holders.

The majority of its passengers are commuters, who provide a type of traffic not usually classified as profitable from the standpoint of a carrier; its haulage of freight to points on Long Island is not in expectable volume considering the territory served; however, the freight business handled on the Bay Ridge branch to and from the tracks of the New York Connecting Railway Company is an important source of revenue.

These considerations may indicate in part if not explain, all the difficulties which have impeded the interested parties in promulgating such a plan of reorganization as it is the purpose of Section 77 of the Act to bring into effect.

A recognition of the complexities of the situation thus inadequately alluded to, prompted the Long Island Transit Authority (a State body brought into existence in response to a deep sense of the public interest involved in the extent to which railroads operating in New York have been adversely affected by changes in the traveling habits of its inhabitants) to undertake a study and the formulation of ameliorative legislation which would best promote the interests of the citizens of this State as a whole. Thus the enactment of Chapter 824 of the Laws of 1954.

As the Court views the matters set forth in the pending petition, that which it is proposed to accomplish is substantially equivalent to a plan of reorganization so far as financial matters are concerned; plus that which no such plan could contain within itself, namely the assured co-operation of the State of New York, acting through sundry subordinate branches of government, for a limited period of years, in the effort to temper tax burdens and otherwise to enable a railroad in the circumstances of this Debtor to work out a complete rehabilitation of its equipment, facilities and service, and its ultimate emergence as an adequate self-sustaining element of the State's transportation system.

If there is any technical impediment to the Court's inherent power to grant the prayer of the pending petition, I confess to a complete inability to discover it.

Turning now to the merits, it appears that the matters stated in the petition may be thus briefly summarized:

### (A)

The intended qualification of the Debtor as a railroad redevelopment corporation, under the new law, upon obtaining a Certificate of Approval as prescribed in § 303 of the State Railroad Law, from the Public Service Commission of the State of New York, and the Long Island Transit Authority. That certificate, if granted, will embrace the undertakings of the applicant concerning physical improvements and rehabilitation, the maintenance of working cash, as defined; the payment of corporate obligations and liabilities and that of its Trustee or Trustees appointed in this Court, all as defined and limited in said certificate. There are also therein stated:

A capitulation of the funds to be loaned to the corporation in behalf of the acquisition of physical improvements and rehabilitation. This includes a new loan by the Pennsylvania Railroad Company of $5,500,000.

Limitations affecting the payments of interest and dividends to continue throughout the statutory status as a railroad redevelopment corporation, on other than the new loans.

That passenger fares are to be maintained so as to enable the corporation to live up to its several undertakings.

### (B)

The payment upon termination of this proceeding of all obligations of the Debtor and the Trustee or Trustees then due and payable and the assumption and payment in due course of all such obligations not then due and payable except those due to the Pennsylvania Railroad Company.

### (C)

The latter obligations will be dealt with upon a refunding basis which will not impose any duty to pay principal or interest while the Debtor is a railroad redevelopment corporation—namely, during a period of twelve years.

### (D)

For nine years of the latter period, real estate taxes payable to the City of New York and the Counties of Nassau and Suffolk will be stabilized substantially on the basis of settlements negotiated by the present Trustee during the year 1953.

Non-real estate local taxes, and State franchise taxes and additional franchise taxes will be eliminated for a like period.

### (E)

A fare increase of 20% which the railroad redevelopment corporation will be in the legal position to adopt, is estimated to yield $5,685,000 of increased annual revenue.

The possibility of subsequent increases to meet enhanced operating and improvement costs is likewise provided for in the amendments to the Railroad Law, with appropriate safeguards through action of the Public Service Commission.

### (F)

Upon termination of this proceeding the Debtor will assume all contracts and obligations of the Trustee or his predecessors, and all such obligations of the Debtor as have not been disaffirmed.

It will pay all costs and expenses, all administrative expenses, all allowances of compensation as approved by the Interstate Commerce Commission and in general will pay all lawful and approved fees and expenses incident to the termination of this proceeding.

A hearing was held according to the prayer of the petition in open court on June 28, 1954 and appearances were noted as above set forth.

Testimony was taken in support of certain factual matters alleged in the petition, and to demonstrate the anticipated position of the Trustee on August 1, 1954 with respect to cash and temporary investments as contrasted with estimated claims against the Debtor, the following figures were stated (Pet. Ex. 3):

"Estimate of Cash Available and Liability on Claims against Debtor and Trustee as of August 1, 1954, excepting (a) obligations incurred and payable in ordinary course of business and (b) New York State taxes [1]

Credits [2]

| | | |
|---|---|---|
| 1. Trustee's cash | | $1,024,444 |
| 2. Trustee's temporary investments | | 5,878,563 |
| Total | | 6,903,007 |

Debits [3]

| | | | |
|---|---|---|---|
| 1. Pre-Bankruptcy claims: | | | |
| (a) Liquidated claims | | | |
| (1) Interline balances | $ 801,740 | | |
| (2) Personal injury and property damage | 850,895 | $1,652,635 | |
| (b) Unliquidated claims | | | |
| (1) Interline balances in face amount of $1,423,132 as filed | 1,107,614 | | |
| (2) Personal injury and property damage claims in face amount of $3,931,579 | 242,515 | 1,350,129 | |
| 2. Post-Bankruptcy claims: | | | |
| (a) Liquidated claims | | None | |
| (b) Unliquidated claims | | | |
| (1) Claims arising out of Kew Gardens and Rockville Centre accidents | 37,500 | | |
| (2) Reserve for per diem | 572,000 | | |
| (3) Reserve for vacation costs and wage increase | 472,000 | | |
| (4) Estimated additional public utility excise and sales and compensating use taxes based on prior experience of New York City audits, payable on the settlement of such audits | 684,442 | | |
| (5) Settlement of Suffolk County taxes with interest and penalties | 582,798 | | |
| (6) Settlement of balance of Nassau County Village taxes—estimated | 100,000 | 2,448,740 | |
| Total | | 5,451,504 | |

1. State taxes with interest and penalties as per returns filed are $1,728,253.

2. The Debtor has claims against the State in connection with work done by railroad forces on grade crossing elimination projects which it is estimated will amount to $593,761 as of August 1, 1954; some of the items comprising this amount are disputed by the State.

3. Principal amounts unless otherwise noted.

June 24, 1954"

All parties appearing supported the application with the exception of the City of New York; opposition was stated orally by an Assistant Corporation Counsel, and the views so expressed have been embodied in a brief filed June 30, in support of the Answer filed June 25.

The issues purporting to be raised by that pleading and discussed in the brief are:

"1. The debtor is not eligible for a discharge in bankruptcy because it has not established solvency or ability to meet its debts as they mature."

It should be clear that the Debtor is not seeking a "discharge in bankruptcy." The showing made in the petition which is challenged only by the City, is that of a corporation which will be able to meet its debts as they mature, by reason of the operation of the statute in question and the amendments to the Railroad Law, and other State statutes enumerated in the title to Chapter 824 of the Laws of 1954. As thus enabled, the Debtor no longer will need the shelter of Section 77 of the Bankruptcy Act.

Chief criticism is directed to the anticipated settlement with the City at $684,442 of public utility sales and compensating use taxes now asserted to be $1,400,000 plus interest and penalties.

The Debtor's estimated figure is based upon adjustments made in prior years at the same ratio; that basis was adopted as the result of audit, and the consideration of legal issues which could have been otherwise preserved for determination by the courts, since all such tax payments have been made under protest.

If all such issues should be ultimately resolved as the result of litigation in favor of the City's quoted figures and it exacts full payment instead of agreeing to adjustments on the basis previously negotiated, the result may so increase the costs of operation of the railroad redevelopment corporation that it will be forced to have recourse to those provisions of the statute designed for its relief through fare increase. That is a provision intended to enable it to pay its debts as they become due. Whether such a result would serve the City's best interests may not have been carefully weighed. In any case, the present asserted claims under this head are contested, and are not deemed to be fixed and determined debts. This means that the figures contained in Exhibit 3 for this item have not been effectually discredited, as the City argues.

The City also criticizes the probable sum estimated in a proposed settlement with the State for franchise taxes. The Attorney General appeared at the hearing and approved the granting of the petition, and the Court would look to that official rather than to the City's counsel, for helpful criticism in respect of State tax matters.

The criticism concerning costs incident to grade crossing elimination seems to have ignored the provisions of Section 306 of the Railroad Law.

The next point is:

"2. The petition is premature because the debtor has not complied with the requirements of Chapter 824 of the Laws of the State of New York for 1954, the provisions of which, it asserts, will be a major influence affecting future solvency of the railroad."

Since the petition seeks the approval of this Court of the showing made of ability to pay debts as they mature, and of the making of appropriate applications with the Interstate Commerce Commission, the Public Service Commission and the Long Island Transit Authority, it is difficult to understand just what is deemed by the City to be premature, or wherein there has been a failure to comply with Chapter 824 of the Laws of 1954.

The City asserts that it intends to oppose such applications, but why that announcement should deter the Court from authorizing their making is not the sub-

ject of even attempted demonstration in the brief.

Finally it is asserted:

"3. Serious question has been raised as to the validity of Chapter 824 of the Laws of 1954, which purports to permit the debtor to qualify as a railroad redevelopment corporation. Accordingly, the debtor should not be discharged until the courts of the State of New York have determined whether said chapter violates the New York State Constitution."

The entire argument is stated in two paragraphs, thus:

"As stated to the Court upon the hearing, the City of New York intends to challenge in the state courts the constitutionality of Chapter 824 of the Laws of 1954 of the State of New York, on the principal ground that the law is a special statute which attempts to confer an unlawful tax exemption in violation of the provisions of the New York State Constitution.

"The City intends to proceed promptly in the state courts, which is the appropriate forum for a determination of the validity of this act under the State Constitution."

If the foregoing presents just cause for delaying decision on this application, it must be confessed that it is beyond the understanding of the Court.

■ Every presumption is in favor of the constitutionality of the statute, not only in theory but because of the auspices under which it was promulgated. It is presently to be accorded every deference by this Court. 28 U.S.C. § 1652.

Since no authorities are cited in the City's brief, those contrary to its position announced on the argument and relied on by the petitioner will not be alluded to, except City of New York v. Fifth Ave. Coach Co., 237 App.Div. 383, 262 N.Y.S. 228, affirmed 262 N.Y. 481, 188 N.E. 29.

The opposition of the City has been welcomed by the Court in the belief that all that could be justly urged against the granting of the prayer of the petition would contribute to a true understanding of the situation. To the extent that the argument is directed to the merits, it is deemed to be lacking in persuasiveness and to overlook the purpose of the new law to promote railroad rehabilitation according to a pattern carefully designed and framed.

The City as a secured creditor has a stake in the rehabilitation of this Debtor, and if it should be disposed later to take the long view, perhaps it may yet come to see as all other parties do, that the sooner this Debtor is enabled to take advantage of the opportunity now afforded to it to effect rehabilitation, the better for all concerned.

■ The showing made by the Debtor consisting of the undisputed factual allegations contained in paragraphs 8(a) (b)(c) of the pending petition; the figures set forth in Exhibit 3 of June 28, 1954; the several tax and grade crossing adjustments and tax eliminations as projected in paragraph 9, together with the several provisions of Chapter 824 of the Laws of New York of 1954 pursuant to the purposes of which the pending petition was filed, support the finding which is hereby made that the Debtor should be authorized to seek to qualify as a railroad redevelopment corporation as contemplated by the said statute and Article Seven of the Railroad Law of the State of New York; to that end it is authorized to take all appropriate corporate action and also to file petitions and all papers and documents necessary or proper in connection therewith, with the Interstate Commerce Commission, the Public Service Commission of the State of New York, and the Long Island Transit Authority in accordance with the appropriate provisions of the several statutes of the State of New York applicable thereto, which are requisite or necessary in the premises.

Further it is found and decided that upon its qualification as a railroad re-

development corporation under the said statute and pursuant to the several provisions thereof, the Debtor will be in a position to pay in full or adequately provide for all obligations of the Debtor and its Trustee or former Trustees appointed by this ·Court, then due and payable; and will be enabled to assume and agree to pay in due course all such obligations not then due and payable, or will otherwise be enabled to discharge or provide for all such obligations in a manner consented to by the holders thereof. Further, that upon such qualification and adjustment of indebtedness, the Debtor will be able to meet its debts as they mature and will no longer need reorganization under Section 77 of the Bankruptcy Act.

Further it is found that upon the granting by the said public authorities and agencies of the said petitions and applications which should be formally reported to this Court, this proceeding should be terminated and in that sense dismissed; and all property of the Debtor held by the Trustee appointed by this Court should be returned to it, and the Debtor should make all payments, enter into all agreements, and take all other steps necessary, advisable or proper to be performed by it in order to qualify as a railroad redevelopment corporation, and to adjust its indebtedness as aforesaid; in this respect the order hereon shall contain the same direction as to all other parties to this bankruptcy proceeding.

■ The Court will retain jurisdiction to assure itself of strict conformity with this decision, and to make such further order or orders as may be appropriate in that respect; to pass upon all allowances and fees; to pass upon the final account of the Trustee and all matters incidental thereto; and to pass upon the report of the Special Master and to fix his compensation and all expenses incidental to his services with respect to pre-bankruptcy claims against the Debtor.

Settle order in accordance with the foregoing on five days' notice.